12 657
92h 518
12b 657
162a 17

## OLMSTED *vs.* BROWN.

A husband having by law a *right* to the services of his wife, whether he requires them or not, and being bound to maintain her, in sickness and in health, any thing that diminishes the value of the right, or increases the burden of the duty, necessarily occasions a pecuniary loss to the husband. Hence he may maintain an action for slanderous words spoken of the wife, affecting her health and spirits, without proving that her services were of any value, or that he has paid out any thing for medicine and attendance.

A person who would recover damages for an injury occasioned by the conduct of another, must show, as an essential part of his case, the relation of cause and effect between the conduct complained of and the injury sustained.

This relation of cause and effect can not be made out by including the independent, illegal acts of third persons.

The repetition of slander is unlawful, unless made with justifiable intentions, and upon a justifiable occasion; and when so unlawful, it is not an ordinary or necessary legitimate consequence of the original act of uttering the slander, and can not be used to make out the relation of cause and effect between the original slander and the injury attributed to it, and which injury might not have happened but for the unjustifiable and illegal interference of another.

Where, in an action brought by a husband to recover damages for slanderous words, spoken by the defendant, of the plaintiff's wife, the plaintiff proved the uttering of the slanderous words by the defendant, to the witnesses, and that the words had come to the knowledge of his wife, and that her health had been injured by them; but no proof was given of any relation between the speaking of the slanderous words to the witnesses, and the injury imputed to them; or that the witnesses were authorized to communicate them to the plaintiff's wife; or that they had the intentions and occasions which would have justified them in communicating the slander; or that they sustained relations from which such intentions could be presumed; *Held* that the action could not be maintained, and that the plaintiff ought to have been nonsuited.

APPEAL from a judgment entered by order of a single judge upon a verdict; bringing up for review the judgment, and a bill of exceptions taken on the trial.

This was an action brought by a husband to recover the damages which he had sustained by means of slanderous words spoken by the defendant, of the virtue, chastity and fidelity of the plaintiff's wife, in consequence of which she became and was depressed in her mind, weakened in her body, and injured in her health, so much, that she became and was unable to attend to

her ordinary business and occupation, and the plaintiff thereby lost her services and was compelled to procure the services and attendance of a physician upon his wife, and was put to great charges and expenses in and about her sickness and attendance. The words charged in the complaint were all charged to have been spoken by the defendant in his own name, and not as hearsay, or as the words of any other person. The defendant, in his answer, *First*, denied the speaking of the words charged, and denied that by reason of the speaking of any such words the plaintiff's wife became and was depressed in mind, weakened in body, or injured in her health, or that the plaintiff was deprived of her services, or put to any expense or charges as stated in the complaint. *Second.* For a further answer, the defendant said, that at the time of the alledged speaking and publishing of the words, of the plaintiff's wife, as in the complaint stated, the said words were, and each of them was true, and not false, scandalous or malicious ; whereupon the defendant spoke and publishing the said words. *Third.* And for a further answer to the complaint the defendant said, that at and before the time of the alledged speaking and publishing of the words in the complaint stated, the plaintiff's wife was &c. ; in substance repeating all the charges against the plaintiff's wife, imputed to him in the complaint, in his own name. There was a reply specifically denying all the facts stated in the second and third paragraphs of the defendant's answer.

The action came on to be tried before the Hon. R. P. Marvin, at the Niagara circuit, on the 10th day of June, 1851. Upon the trial, the plaintiff introduced several witnesses, some of whom testified to the speaking, by the defendant, to them, of and concerning the plaintiff's wife, of words substantially as charged in the complaint ; and also proved the speaking of other similar words, by the defendant, which, at the time of speaking them, he said had been told to him by other persons, sometimes naming the persons who told him and sometimes not naming them. The plaintiff then gave evidence tending to show that the words spoken by the defendant of the plaintiff's wife came to her knowledge, and that her health had been injured by the slanders

Olmsted *v.* Brown.

circulated against her. One witness testified that she had known the plaintiff's wife four or five years. That her health had not been as good as formerly, for two years past; that it began to fail when she, the *witness, first heard these stories.* That the witness then noticed a decline in her health. That she always did her work alone, before these stories commenced to circulate; since that she had not been able to do her work. Has had hired help when she could get it. That she appeared considerably excited about these stories; acted almost as if she was crazy, and was not able to do her work. That a physician was called last June. Considerable other evidence, to the same effect, was given by the plaintiff, on the subject of his wife's ill health, and his own special damages, and he thereupon rested his case. Upon which the defendant's counsel, after raising some formal objections, which it is not necessary to mention, *moved for a nonsuit,* on several grounds specified in the bill of exceptions; some of which were resumed on the appeal, under the appellant's first point. The learned judge refused the nonsuit; to which the defendant's counsel excepted. Some other evidence was offered by the defendant's counsel, which the judge rejected, and to which rejection the defendant's counsel excepted.

A variety of evidence was then given by both parties upon the several matters embraced by the trial, and the cause, upon the summing up of counsel on both sides, and upon a charge of the judge, to which there was no exception, was submitted to the jury, who found a verdict for the plaintiff for $1000. Judgment having been entered for the plaintiff on the verdict, a bill of exceptions was made, and with the judgment roll to which it was attached, were brought here on the appeal of the defendant.

*F. J. Fithian,* for the appellant.

*M. Seaman,* for the respondent.

*By the Court,* MULLETT, J. The first point made by the appellant on his argument before us was, that the justice who presided at the trial erred in refusing to nonsuit the plaintiff,

for several reasons particularly specified; among the most important of which were the following: *First.* That the words charged in the complaint were not proved as charged; nor in substance as charged. That the words were all charged in the complaint as having been spoken by the defendant upon his own knowledge, but the proof was that he spoke them as hearsay, and upon the information of others. *Second.* That the plaintiff gave no proof of pecuniary damages. That he did not prove that the services of his wife (if any were lost) were of any value; nor that he paid out any thing for medicine and attendance. *Third.* That the special damages, if any, were not proved to have been the immediate consequence of the speaking of the words by the defendant. The words were not spoken by the defendant in the presence of the plaintiff's wife, nor communicated to her by the defendant's directions. That the immediate cause of the special damages, therefore, was the voluntary repetition of the words in the hearing of the plaintiff's wife, by persons other than the defendant.

I. The appellant's first proposition is not warranted by the case. The plaintiff did give evidence tending to prove, substantially as charged, words sufficient to sustain his action; and he was not required to prove all the words charged. His honor, the judge, did right in denying the motion for a nonsuit, so far as it was founded on this proposition.

II. The appellant's second proposition is no better sustained. By law, a husband has a *right* to the services of his wife, whether he requires them or not, and is bound to maintain her, in sickness and in health. Any thing that diminishes the value of the right, or increases the burden of the duty, necessarily occasions a pecuniary loss to the husband. There was sufficient proof of these elements of pecuniary damages to go to the jury, and the judge was right in submitting it to their consideration.

III. The appellant's third proposition involves consequences of far greater importance, and requires more serious consideration. To support this point, the appellant refers to the case of *Ward* v. *Weeks,* (7 *Bing.* 211, 20 *Eng. Com. Law Rep.* 101.) That was an action of slander, for the recovery of special dam-

ages. The words charged in the declaration to have been spoken by the defendant of the plaintiff, were, "He is a rogue and a swindler. I know enough about him to hang him." And the plaintiff alledged as special damages, that by means of the speaking of the words, one John Bryer, who was about to sell goods to the plaintiff on credit, refused to trust him. The defendant pleaded the general issue. On the trial of the cause, the evidence which the plaintiff was prepared to produce was, that the defendant had spoken the words charged in the declaration to one Edward Bryce, and that Bryce had communicated the words as the statement of the defendant to Bryer, who thereupon refused to trust the plaintiff. On this statement of the evidence, the plaintiff was nonsuited. Upon refusing to set aside the nonsuit and to grant a new trial, Tindal, Ch. J. said : "The only ground of action is the special damages which the plaintiff has alledged in his declaration. The question, therefore, is, whether the special damages which is the gist of the action, has been proved as it is alledged; or whether there is a variance between the allegations and the proof. The plaintiff's allegation is, that by reason of the *defendant's* representations to divers persons, one John Bryer refused to trust the plaintiff. The evidence necessary to support the allegation, would have been, either that John Bryer was present and heard the defendant make the representations to some person ; or, at the very least, that when the defendant made such representations he directed them to be communicated to Bryer. But neither of these suppositions exist in fact. On the contrary, the evidence was that the words were addressed to Edward Bryce, and that Bryce at a subsequent time and place, and without any authority from the defendant, repeated the representations to Bryer. The repetition of the words, and not the original statement, occasioned the plaintiff's damages. Such a spontaneous and unauthorized communication can not be considered the necessary consequence of the original uttering of the words. For no effect whatever was produced from the first speaking of the words to Bryce. If he had kept them to himself Bryer would still have trusted the plaintiff. It was the repetition of them by Bryce to

Bryer, which was the voluntary act of a free agent, over whom the defendant had no control, and for whose acts he is not accountable, that was the immediate cause of the plaintiff's damages. The court therefore came to the conclusion that as the declaration alledged as the only grievance, the original false speaking of the words, the allegation that by reason of the committing of *such* grievances, Bryer refused to give the plaintiff credit, was not made out by the evidence, and therefore refused to set aside the nonsuit. In this aspect of the case of *Ward* v. *Weeks*, it will not help the appellant here. The decision of that case was put on the ground of variance between the allegation and the proof, in respect to the injury complained of. The allegation being that by means of the *speaking of the words by the defendant*, the injury was occasioned, and the proof being that by means of the *repeating of the words* by *another*, the injury was occasioned. But in the case under consideration the plaintiff gave no proof whatever to show the relation between the defendant's slander and his wife's sickness. Therefore there was no variance between the allegations and the proof on this subject.

This brings us to the consideration of the real defect in the plaintiff's case, as he presented it on the trial. He gave no proof showing any relation between the speaking of the words by the defendant, and the injury complained of. It is a rule equally consistent with good sense, good logic, and good law, that a person who would recover damages for an injury occasioned by the conduct of another, must show, as an essential part of his case, the relation of cause and effect between the conduct complained of and the injury sustained. This rule was judicially recognized by Spencer, Ch. J. in the case of *Butler* v. *Kent*, (19 *John.* 228,) by Cowen, J. in the case of *Hastings* v. *Palmer*, (20 *Wend.* 225,) and by Beardsley, J. in the case of *Keenholts* v. *Becker*, (3 *Denio*, 346.) Another rule equally clear and well settled is, that this relation of cause and effect can not be made out by including the independent illegal acts of third persons. A man may be justly held responsible for the necessary or ordinary legitimate consequences of his own acts.

Olmsted *v.* Brown.

And such consequences may be included in the chain of causes which connect the original act with the final effect. But he can not be made accountable for the unauthorized illegal acts of other persons, although his own conduct may have indirectly induced or incited the commission of the acts. A man by doing one wrong does not thereby render himself accountable for the independent wrongs of others. This principle is well illustrated by the hypothetical case put by Lord Ellenborough, in his opinion in the case of *Vicars* v. *Wilcox,* (8 *East,* 1,) and was adopted by the court of king's bench in that case, and was approbated by Savage, J. in the case of *Moody* v. *Baker,* (5 *Cowen,* 357,) and by Bronson, J. in the case of *Beach* v. *Ranny,* (2 *Hill,* 314.) Although this rule appears just and simple, when applied to cases like those supposed or cited to illustrate it, as those above referred to, in which it was adopted, where the original act assigned as the cause of the injury was slander by the defendant, and the immediate cause of the injury was the independent unlawful act of another person, of a different nature from the slander, and in no way necessarily connected with it, yet upon a hasty view of the subject, there appears to be more intricacy if not more indirection in applying the rule to cases where the immediate cause of the injury is the *repeating* of the slanders originally uttered by the defendant. Perhaps this apparent difficulty in the application of the rule to the last class of cases may be somewhat diminished by a due consideration of the legal character of the act of repeating slander. It is easy to perceive that slanderous words may be repeated with the same malicious intention, and the same mischievous effect, as they were first uttered. It may, therefore, be laid down as a general rule of law, that the repeating of slanderous words is unlawful and slanderous, unless justified by the intention with which, and the occasion upon which, they are repeated. This appears to be the spirit of the modern English, and most of the American cases, on the subject, as manifested by the case of *McPherson* v. *Daniels,* (10 *Barn. & Cress.* 263,) by the remarks of Tindal, J. in the case of *Ward* v. *Weeks,* before referred to ; by the rule laid down by our own supreme court, in the case of *Dole* v.

*Lyon*, (10 *John.* 447,) and by the clearly expressed opinion of Wilde, J. in the case of *Stevens* v. *Hartwell*, (11 *Metc. Rep.* 549.) The case of *Stevens* v. *Hartwell*, was an action of slander, brought by a butcher to recover special damages which he had sustained in the loss of his customers and business, by means of the defendant representing that the plaintiff had sold the pork of a diseased hog. On the trial, the plaintiff proved the speaking of the words charged, by the defendant, in the presence and hearing of the witness, Samuel Miller, and some other persons. The plaintiff's counsel then asked the witness if he had told his brother, Jacob Miller, the substance of what the defendant had said to the witness; which evidence was offered for the avowed purpose of following it up by proof that the words were repeated by Jacob and other persons, to the injury of the plaintiff, as alledged by the declaration. The offered evidence was rejected; to which the plaintiff excepted, and consented to a nonsuit, subject to the opinion of the whole court upon the ruling of the judge at the trial. There were some other questions raised and discussed on the trial and considered by the court in bank, but the one presented by the above abstract is all that it is necessary to examine in reference to the point under consideration. On the decision of the motion to set aside the nonsuit, and for a new trial, Wilde, J. after remarking that the words charged were not actionable without proof of special damages, observed, "that the ruling of the judge at the trial was fully sustained by the case of *Ward* v. *Weeks*, and other cases cited by the defendant's counsel, and that such cases were conformable to the settled English doctrine. And after referring to and disapprobating the ruling of the court in *Lord Northampton's case*, (12 *Co. Rep.* 133,) on the subject of justifying the repetition of private slander by giving the name of the author, said: "It had been overruled by the court of king's bench, in the case of *McPherson* v. *Daniels*, (10 *Barn. & Cress.* 263,) and other cases referred to by him, and by the common pleas in the case of *Ward* v. *Weeks*. That in the former case it was decided that in an action of slander, it is not a sufficient defense to show that the defendant heard the slander from another, and

named the person at the time, without showing that he believed it to be true, and spoke the words on a justifiable occasion." The learned judge further remarked, in reference to the decisions referred to by him, that " the reasons on which they proceeded were cogent and satisfactory; the repetition of slander is not to be encouraged, and is not to be justified by merely naming the person who first uttered it. Such repetition extends the slander, and gives it additional credit. It is, therefore, unlawful, unless believed to be true, and uttered on a justifiable occasion. The court, therefore, came to the conclusion that the evidence offered on the trial would not have proved any special damages caused by the defendant, who was accountable for his own unlawful acts, and not for the unlawful unauthorized acts of another party." That the plaintiff's remedy, according to the evidence offered at the trial, was against the party who was the immediate cause of the special damages alledged in the declaration. The doctrine laid down in the recent English cases above referred to, and in the case in Massachusetts, is in accordance with the ruling in our own supreme court in the case of *Dole* v. *Lyon*, by which the justification for repeating slanderous words is made to depend upon the intention with which the repetition is made. These decisions, and the reasons upon which they are founded, most clearly and fully establish the doctrine that the repetition of slander is unlawful, unless made with justifiable intentions and upon a justifiable occasion. And the conclusion is inevitable that when so unlawful, it is not an ordinary or necessary legitimate consequence of the defendant's original unlawful act, and can not be used to make out the relation of cause and effect between the defendant's original slanders and the injury attributed to it, and which might not have happened but for the unjustifiable and illegal interference of another.

This rule presupposes what the law plainly declares, that there may be intentions and occasions which will justify the repetition of slanderous words. And those who duly appreciate the rights and duties of the social, domestic, religious and mere

business relations of civilized life, will find no difficulty in judging when these occasions occur. Where they do occur, the repetition of slanderous words, with the proper intentions, may be considered the ordinary or necessary and legitimate consequences of the uttering by the first slanderer, and render him accountable for all the injuries occasioned by such legitimate repetition. In such cases the malice to be inferred from the unnecessary and unlawful repetition of the slanderous words, will be disproved by the intention, or rebutted by the occasion. This rule, while it holds the original slanderer to a rigid accountability for the necessary consequences of his own acts, gives no encouragement to the equally malicious, and more contemptible relator of private scandal. It ought, therefore, to be sustained not only for its logical connection with general principles, but for the beneficial influence it is calculated to have upon the community.

In the case under consideration, the plaintiff gave no proof of any relation between the speaking of the slanderous words by the defendant, to the witnesses, and the injury imputed to them. He proved, it is true, that the words had come to the knowledge of his wife, and that she had been made sick by them ; but he had already proved that they were uttered by the defendant to the witnesses, none of whom were authorized to communicate them to the plaintiff's wife ; nor did it appear that any of them had the intention and occasion which would have justified them in communicating the slander, or that they sustained relations from which such intentions could be presumed. To connect the defendant's speaking of the words with the injury imputed to that speaking, might have embraced all the slanders and tattling of the whole neighborhood, and made him responsible for effects which his own acts would not have produced. It is clear on well settled grounds and principles—on the principle of the decision on the case of *Stevens* v. *Hartwell*, on the rule as recognized by Mr. Justice Beardsley, in the case of *Keenholts* v. *Becker*, and on the express adjudication in the case of *Hastings* v. *Palmer*, that the plaintiff failed to make out his case, and ought to have been nonsuited.

Having come to this conclusion, it is unnecessary to examine the other points made on the appeal.

The judgment appealed from must be reversed, and a new trial ordered.

[ERIE GENERAL TERM, April 27, 1852. *Taggart, Marvin, Hoyt* and *Mullett*, Justices.]